COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Humphreys and Senior Judge Coleman
Argued at Richmond, Virginia


JERMAINE HARRIS

                                    MEMORANDUM OPINION* BY
v.    Record No. 0687-00-2         JUDGE SAM W. COLEMAN III
                                         JULY 10, 2001
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

           Lawrence Martin Cohn (AA, Affiliated
           Attorneys, Inc., on briefs), for appellant.

           John H. McLees, Jr., Senior Assistant
           Attorney General (Mark L. Earley, Attorney
           General, on brief), for appellee.


     Jermaine Harris, appellant, appeals his convictions after a

bench trial of possession of cocaine with the intent to distribute

in violation of Code § 18.2-248, the simultaneous possession of a

firearm in violation of Code § 18.2-308.4, and possession of

marijuana in violation of Code § 18.2-250.1.  He argues that the

trial court erred in denying his motion to suppress the evidence,

claiming that the search of his apartment was illegal because the

police (a) did not obtain a search warrant before entering the

curtilage of his residence, and (b) exceeded the scope of a lawful

protective sweep of the apartment.  Appellant claims the evidence

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

collected by the police both before and after they obtained a search warrant, and the statements he made to the police, should have been suppressed.  Appellant also contends the trial court erred by sentencing him to the five year mandatory minimum under Code § 18.2-308.4(B).  He asserts the mandatory sentencing provision of Code § 18.2-308.4(B) is invalid because (a) it is unconstitutionally ambiguous, (b) it violates the separation of powers doctrine, and (c) it violates his right to due process of the law.  For the reasons that follow, we disagree and affirm his convictions.

BACKGROUND

Viewed in the light most favorable to the Commonwealth, Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), the evidence proved that on October 21, 1999, Richmond Police Officers Robert Barlow and Michael McCray received information from an informant that the residents of a certain apartment were selling drugs.  The officers traveled to the specified apartment located adjacent to a private street.  They knocked on the door, which was opened from within.  The officers saw appellant and his brother, Darrell Harris, standing in the doorway and noticed a strong odor of marijuana coming from inside the apartment.  After the officers identified themselves and asked permission to enter, Darrell Harris invited them inside.  Barlow informed appellant and Darrell Harris that they were investigating a complaint of drug activity and asked the brothers if there were

-

any illegal drugs or weapons in the apartment.  Both men denied having drugs or weapons but after the officers mentioned the odor of marijuana, appellant admitted that he had just smoked a "blunt" (a hollowed-out cigar filled with marijuana).

The officers then asked permission to search the apartment. Darrell Harris gave his consent, but appellant demanded that the officers obtain a search warrant.  Barlow and McCray moved the brothers away from the front door into the living room and told them that they would be held under investigative detention to preserve the scene while Barlow went to obtain a warrant.  As the officers and the brothers entered the living room, Darrell Harris began backing up towards a windowsill on which an object was lying covered by a towel.  McCray testified that he was concerned that the object beneath the towel was a weapon.  Therefore, McCray pulled the towel from the windowsill.  From beneath the towel, a clear box fell to the floor.  Without touching the box, the officers could see inside and saw nine individually packaged small white rocks that appeared to be cocaine.

The officers then handcuffed the brothers and advised them of their <u>Miranda</u> rights.  Barlow remained with the detainees as McCray conducted a security check of the rest of the apartment. On the staircase leading to the second floor, McCray found a small plastic bag of the type often used to package drugs.  Upstairs in plain view he found a rifle, two shotguns and the marijuana blunt.

-

Barlow obtained a search warrant.  In his affidavit for the warrant, Barlow stated that among the material facts constituting probable cause were the presence of the marijuana blunt, the weapons, and packages of cocaine.

ANALYSIS

Suppression Motion

On appeal from a motion to suppress evidence, we review the evidence in the light most favorable to the prevailing party. See McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc).  When reviewing a Fourth Amendment suppression ruling, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  Id. at 198, 487 S.E.2d at 261 (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment.  See id.

Appellant contends Barlow and McCray, by entering the curtilage of his apartment without first obtaining a warrant, violated his Fourth Amendment right to be free from unreasonable searches and seizures.  Indeed, "[s]ubject to several well established exceptions, the Fourth Amendment prohibits warrantless searches of any place or thing in which a person has a justifiable expectation of privacy."  Shaver v. Commonwealth, 30 Va. App. 789, 795, 520 S.E.2d 393, 396 (1999).  However, in

-

this case, the officers did not conduct a "search" when they approached the apartment by its principal entrance and knocked on the door. "Under the Fourth Amendment, a search is an invasion into a space or area where a person has a reasonable expectation of privacy in the 'person,' or the person's 'houses,' 'papers,' or 'effects.'" Hughes v. Commonwealth, 31 Va. App. 447, 455, 524 S.E.2d 155, 159 (2000). To determine whether a citizen "enjoys a reasonable expectation of privacy . . . we consider whether he [or she] has exhibited an expectation of privacy in the object and whether that expectation is one that 'society is prepared to recognize as reasonable.'" Anderson v. Commonwealth, 25 Va. App. 565, 576, 490 S.E.2d 274, 279 (1997) (quoting Katz v. United States, 389 U.S. 347, 361 (1967) (Harlan, J., concurring)), aff'd, 256 Va. 580, 507 S.E.2d 339 (1998). "[W]here private lands are exposed to observation by members of the public who may legitimately come upon the property, a citizen does not reasonably have an expectation of privacy in areas that the passing public can observe." Shaver, 30 Va. App. at 795, 520 S.E.2d at 396.

Here, appellant had no reasonable expectation of privacy in the front entrance to his apartment, an area "observable by members of the public who might approach [his] residence, pass by, or lawfully be upon [the] property." Id. Therefore, the Fourth Amendment protections did not prohibit the officers from

-

approaching the apartment and knocking on the front door for the purpose of investigating the allegation of drug activity.

Appellant also contends the officers illegally searched his apartment after they entered the residence. The evidence proved that the officers' initial contact with appellant and his brother was consensual. Darrell Harris invited the officers into the apartment.

> [A] consensual encounter between the police and a citizen becomes a seizure for Fourth Amendment purposes "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." In order for a seizure to occur, the police must restrain a citizen's freedom of movement by the use of physical force or show of authority.

Ford v. City of Newport News, 23 Va. App. 137, 141-42, 474 S.E.2d 848, 850 (1996) (citations omitted). See United States v. Mendenhall, 446 U.S. 544, 554-55 (1980) (holding that Fourth Amendment rights are not implicated by consensual encounters between citizens and the police).

Once inside the apartment, the officers asked the brothers whether they had drugs or weapons in the apartment. When they denied having any contraband, Barlow noted that he could smell marijuana. Appellant then admitted that he had smoked marijuana. The officers asked permission to search the premises. Darrell Harris agreed to the search but appellant objected. The officers decided that McCray would detain the brothers while Barlow obtained a search warrant. Based on the

-

totality of the circumstances, at the time the officers detained

appellant they had the reasonable suspicion necessary to conduct

an investigative detention.

> An officer may detain a person in a "Terry
> stop" if the officer possesses articulable
> facts supporting a reasonable suspicion that
> a person has committed a criminal offense,
> is engaging in one, or is about to engage in
> one.  In determining whether an officer had
> a particularized and objective basis for
> suspecting a person of criminal activity, a
> court must consider the totality of the
> circumstances.  The test for reasonable
> suspicion under Terry is less stringent than
> the test for probable cause.  Reasonable
> suspicion can be established with
> information different in quantity or content
> than that required to establish probable
> cause.  Reasonable suspicion differs from
> probable cause "also in the sense that
> reasonable suspicion can arise from
> information that is less reliable than that
> required to show probable cause."

Clarke v. Commonwealth, 32 Va. App. 286, 294-95, 527 S.E.2d 484,

488-89 (2000).

The officers moved the brothers from the foyer to the

living room.  At that time, Darrell Harris began backing towards

the windowsill.  "Although the authority to conduct a pat-down

search does not follow automatically from the authority to

effect an investigative stop, '[w]here the officer can "point to

particular facts from which he reasonably inferred that the

individual was armed and dangerous" [he is] justified in

searching for weapons.'"  Harris v. Commonwealth, 33 Va. App.

325, 334, 533 S.E.2d 18, 22 (2000) (citation omitted).

-

"[F]risking for weapons based upon the exigency of protecting an officer's safety is not limited to a pat-down of the suspect but may extend to nearby vehicles . . . or rooms or premises to which the suspect may retreat to secure a weapon."  Washington v. Commonwealth, 29 Va. App. 5, 14, 509 S.E.2d 512, 516 (1999) (en banc).  McCray testified that he was concerned that the object beneath the towel was a weapon.  "An officer is entitled to view the circumstances confronting him in light of his training and experience, and he may consider any suspicious conduct of the suspected person."  James v. Commonwealth, 22 Va. App. 740, 745, 473 S.E.2d 90, 92 (1996) (citation omitted). "The relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is now well recognized."  Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994).  McCray reasonably inferred that the brother may have been going to obtain a firearm or weapon.  McCray's lawful search of the immediate area surrounding the suspects revealed several packets of cocaine.

Barlow testified that the officers decided to determine whether other people were in the apartment in order to protect McCray's safety and preserve any evidence while Barlow had gone to obtain a search warrant.  McCray cursorily searched the upstairs rooms of the apartment and located drug paraphernalia and weapons.  Once officers have entered a residence and observed contraband inside, "in order to determine if anyone is

-

present who might destroy evidence or pose a threat to police safety, police officers may conduct a limited security check in those areas where individuals could hide." Crosby v. Commonwealth, 6 Va. App. 193, 202, 367 S.E.2d 730, 735 (1988). See also Commonwealth v. Thornton, 24 Va. App. 478, 486, 483 S.E.2d 487, 491 (1997).

Accordingly, because the officers lawfully searched the apartment, the search warrant Barlow obtained was valid and not based on evidence impermissibly acquired. Thus, the trial court did not err by refusing to suppress the evidence.

### Mandatory Sentence

Appellant challenges the imposition of the mandatory five year sentence under Code § 18.2-308.4. He argues that because it conflicts with other sentencing statutes, it is ambiguous; that it violates the Virginia Constitution's separation of powers doctrine; and that it violates constitutional guarantees of due process by denying him an individualized sentencing proceeding. "When testing the constitutional validity of statutes, courts shall presume the statute to be valid. Consequently, the burden to show the constitutional defect is on the challenger." Gray v. Commonwealth, 30 Va. App. 725, 731-32, 519 S.E.2d 825, 828 (1999) (citations omitted).

In pertinent part, Code § 18.2-308.4 states:

> Violation of this section shall constitute a separate and distinct felony and any person convicted thereof shall be guilty of a Class

-

> 6 felony, shall not be eligible for
> probation, and shall be sentenced to a
> minimum, mandatory term of imprisonment of
> five years.

Appellant contends this mandatory minimum sentence conflicts with the Class 6 felony sentencing range found in the Code. Code § 18.2-10(f) provides that the punishment for a Class 6 felony is

> a term of imprisonment of not less than one
> year nor more than five years, or in the
> discretion of the jury or the court trying
> the case without a jury, confinement in jail
> for not more than twelve months and a fine
> of not more than $2,500, either or both.

"[W]hen one statute speaks to a subject in a general way and another deals with a part of the same subject in a more specific manner, the two should be harmonized, if possible, and where they conflict, the latter prevails." Virginia Nat'l Bank v. Harris, 220 Va. 336, 340, 257 S.E.2d 867, 870 (1979). Code § 18.2-308.4 imposes a mandatory minimum sentence that is within the range provided by Code § 18.2-10. By describing the offense as a Class 6 felony, Code § 18.2-308.4 limits the sentence that the trial judge may impose. Additionally, the Class 6 designation also serves the purpose of precluding the imposition of a fine because the mandatory jail term exceeds twelve months. In In re: Commonwealth of Virginia, 229 Va. 159, 326 S.E.2d 695 (1985), the Supreme Court approved mandatory minimum sentences, finding that "by prescribing a mandatory sentence, the General Assembly has divested trial judges of all discretion respecting

-

punishment." Id. at 163, 326 S.E.2d at 697. The legislative creation of this sentence does not violate the separation of powers doctrine.

The concept of individualized sentencing in criminal cases generally is not constitutionally required. Shifflett v. Commonwealth, 26 Va. App. 254, 260, 494 S.E.2d 163, 166 (1997). The trial court's imposition of the mandatory minimum sentence in this non-capital case did not violate appellant's constitutional rights. The trial court did not err in sentencing appellant pursuant to Code § 18.2-308.4.

Therefore, we affirm appellant's convictions.

Affirmed.